UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LISA C. ARNETTE, | NO. 3:21-cv-05608 |
| Plaintiff, | (PIERCE COUNTY SUPERIOR COURT CAUSE NO. 20-2-04397-0) |
| v. | NOTICE OF REMOVAL BY DEFENDANT WALMART INC. |
| WALMART, INC., a foreign profit corporation, | |
| Defendant. | *(CLERK'S ACTION REQUIRED)* |

TO:    CLERK OF THE COURT;

AND TO: PLAINTIFF'S COUNSEL OF RECORD

## I. RELIEF REQUESTED

Defendant WALMART INC. ("Walmart") seeks to remove this case under 28 U.S.C. §§ 1332 and 1446(b)(3).   Walmart seeks removal beyond the one-year deadline in 28 U.S.C. § 1446(c)(1), due to Plaintiff and her counsel acting in bad faith in order to prevent Walmart from removing this action, including but not limited to deliberately failing to disclose the actual amount in controversy to prevent removal as described in 28 U.S.C. § 1446(c)(3)(B).

## II. STATEMENT OF FACTS

1.   Underlying Incident/Complaint & Other Relevant Procedural Facts

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

1    Plaintiff LISA C. ARNETTE ("Plaintiff") initially filed suit in Pierce County Superior

2  Court on January 21, 2020, alleging that she "was tripped by an unsafe floor surface and fell"

3  while entering a Walmart Supercenter located at 6796 State Highway 303 NE, Bremerton,

4  Washington ("Bremerton Walmart").  *See* Declaration of Eddy Silverman, attached hereto as

5  **Exhibit A**; *see also* Complaint, attached hereto as **Exhibit B**, ¶¶ 3.1-3.2.

6    At the time of filing and service, Plaintiff was represented by J. Michael Koch &

7  Associates, and attorney Grant Smith; however, subsequent to the filing of the Complaint,

8  Michael Koch unfortunately passed away, and the Law Offices of Greg S. Memovich, PLLC

9  assumed representation of Plaintiff on or around May 1, 2020.  *See* Withdrawal & Substitution,

10 and email correspondence from Pl.'s counsel regarding same, attached hereto as **Exhibit C**.

11   There was no amendment of the Complaint at or around the time Plaintiff's new

12 attorney assumed representation.  Thus, the Complaint remained silent on the issue of damages,

13 and therefore not removable "on its face."  *See* Ex. B.  In fact, the Complaint did not even

14 describe in any detail the nature of Plaintiff's alleged injuries.  *See id.*

15   2.   Initial Handling By Plaintiff's New Counsel/Initial Claims Regarding Case Value

16   One of the first matters Plaintiff's new attorney handled upon assuming representation

17 was securing responses to written discovery that Walmart had served to Plaintiff more than 5

18 months earlier, while she was still represented by Koch & Associates.  *See* proof of service and

19 Pl.'s Resps. to Interrogs., attached hereto as **Exhibit D**; *see also* combined emails, attached

20 hereto as **Exhibit E**, at 2 (describing process of "reviewing and verifying" responses).

21 Walmart had served Interrogatories, Requests for Production of Documents, and an RCW

22 4.28.360 Request for Statement of Damages ("RSD") within a week of being served with the

23 Complaint.  In addition to the RSD, Walmart had served an Interrogatory (No. 28) also

24 expressly asking Plaintiff to state her damages.  The purpose in doing this was to determine the

25 removability of a case with clearly diverse parties but an uncertain amount in controversy.

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

1    On July 15, 2020, Plaintiff's counsel wrote to Walmart while purportedly in the midst

2    of "reviewing and verifying" Plaintiff's responses to Walmart's initial written discovery, and

3    while preparing to send medical records and bills with the responses which were in his

4    possession.  *See* Ex. E at 2.  There, Plaintiff's counsel wrote, "I believe in a previous email I

5    might have indicated that I thought this case would be headed for MAR, [but] I'm no longer

6    confident about that.  Ms. Arnette has an orthopedic consult regarding potential knee surgery."

7    *Id.*  Despite implicitly commenting on the damages in dispute and the potential jurisdictional

8    ramifications of such information—i.e., the potential to render the case subject to mandatory

9    arbitration—Plaintiff's counsel responded to Interrogatories without providing any damages

10   information, (a) objecting to the aforementioned Interrogatory No. 28 and (b) simply not

11   responding to the RSD at all.  *See* Ex. D, Interrog. No. 28; *see also* Ex. E at 3 (asking for RSD

12   response).  The objection to Interrogatory No. 28 was phrased as follows:

14   **OBJECTIONS TO INTERROGATORY RE: STATEMENT OF DAMAGES**

15   Objection: (1) This interrogatory is beyond the scope of permissible discovery, as the statutory basis
16   for this interrogatory requires that it be the subject of the separate request for statement of damages.
     (2) Discovery procedures are the wrong place to conduct negotiations, which are not admissible in
17   evidence under ER 408. (3) To the extent that this interrogatory asks plaintiff to state an opinion about
     the proper amount of general damages, that is a question for the jury to determine, and any answer
18   would be based on opinion, speculation and conjecture, and is not a discoverable fact.

18   Walmart understood the first part of the objection to Interrogatory No. 28. to mean that

19   Plaintiff's counsel was insisting the proper tool to obtain damages information was an RSD.

20   Such an objection was perplexing though in view of the fact that Plaintiff had refused to

21   respond to the RSD also.  *See* Ex. E at 3.  Accordingly, counsel for Walmart wrote back asking

22   that Plaintiff respond to one or the other of the requests for damages information, while making

23   it clear why Walmart sought the information, making multiple express references to the

24   "amount in controversy."  *See id.*  Counsel for Walmart observed that opposing counsel was

25

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1 seemingly "representing that the amount in controversy could be in excess of Pierce Co. $100k

2 mandatory arb limit,"[1] and noted "[the] amount in controversy remains unclear." *Id.*

3      The day after defense counsel reached out regarding the lack of clarity surrounding the

4 "amount in controversy," and requested a statement of damages to clarify that issue, Plaintiff

5 served a response to the RSD, representing that Plaintiff's special damages were barely over

6 $5,000, and that her general damages were estimated to be "only" $40,000. *See* RSD

7 Response, attached hereto as **Exhibit F**.

8      3.  <u>Walmart Attempts To Negotiate Settlement Based On Claimed Damages</u>

9      On October 20, 2020, shortly after receiving Plaintiff's RSD-response, counsel for

10 Walmart submitted what was by all accounts a strong offer to settle the case in view of the

11 claimed damages. Not only did Plaintiff's counsel not counter the offer, counsel did not

12 acknowledge receipt at all, despite follow up from defense counsel. *See* Ex. E at 5-6. Instead,

13 Plaintiff responded indirectly, <u>by filing a motion to compel and seeking sanctions regarding an</u>

14 <u>issue the parties had been discussing concurrently, regarding the production of information that</u>

15 <u>counsel for Walmart had *agreed to provide*</u>. *See* ltr., attached hereto as **Exhibit G**.

16      Defense counsel wrote to Plaintiff on 11/2/2020, confused, to try to figure out why

17 Plaintiff's counsel would elicit a settlement offer on October 19, then ignore the offer entirely

18 in favor of filing a sanctions-seeking motion to compel, just 11 days after the parties last

19 communicated and Walmart *agreed* to provide the information at issue.

20

21        You did not respond to my email on October 20. You did not respond to my email on October 27. You did not ask about the status of the documents. Instead, you met my invitation to engage in settlement negotiations, which you expressly invited, with a motion to compel and a request sanctions—while accusing *me* of bad faith. Pl.'s Mot. 3:11-12. Any form of communication, direction, or guidance in between October 20 when I emailed you and October 27 when I followed up would have kept us off this path.

22

23      Ex. G at 2-3.

24

25

---

[1] And therefore also the jurisdictional minimum of $75,000 set out in 28 U.S.C. § 1332.

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 4

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

4.  <u>Allegedly Pending Surgical Consultation Preventing Definitive Case Valuation</u>

While the oddly adversarial response to Walmart's October 20 settlement offer was confusing and disconcerting, with only ~$45,000 in controversy, continuing to pursue both pre-trial settlement and/or arbitration both continued to make sense.  So, on November 5, after Plaintiff's counsel agreed to withdraw the mooted Motion to Compel, and after counsel for Walmart stipulated to Plaintiff's request for a continuance,[2] counsel for Walmart tried again—writing "[D]o you want to transfer the case to arb?"  Ex. E at 7.  Here again though, Plaintiff's counsel suggested that a pending "surgery consult" was preventing him from being able to determine the arbitrability of the case—like he had claimed back in July.  *See supra* pg. 3:7-8 (citing/discussing prior mention); *see also* Ex. E at 8 ("If she doesn't need surgery…I would even encourage her to consider MAR….Also, depending on the costs of the outcome of the surgery, MAR may or may not be off the table.").

Incidentally, Plaintiff had hinged her unilateral request for a continuance, filed at the same time as the Motion to Compel, on the same argument—i.e., that surgical consideration was still pending.  *See* Pl.'s Decl. Re: Motion to Continue, attached hereto as **Exhibit H**; *see also id.* at ¶ 1.  In a signed "Declaration to Continue," Plaintiff's counsel claimed that he did not have records in his file dated later than June 21, 2018, and represented to the Court that "possible surgery" was still being actively considered.  *See id.* at ¶¶ 3(1)-(2).  Plaintiff's counsel also represented that he was "relatively new" to the case, despite having been working on the case since at least May 1, 2020, at that point—roughly 7 months.  *Id.* at ¶ 1.

In the aforementioned Declaration, Plaintiff did not identify the name of the surgeon or describe the nature of the "possible surgery."  Actually, on closer inspection, the "surgical

---

[2] In Exhibit G, the Court can see how the Motion to Compel seemed further unnecessary and adversarial in view of the fact that Plaintiff's counsel was concurrently seeking to continue the case; thus, there was seemingly no rush to compel documents which, again, counsel for Walmart had already agreed to provide and which were in fact already being gathered to send to Plaintiff when Plaintiff filed and moved for sanctions.

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 5

consult" story in the Declaration was ambiguous and did not seem to make sense, primarily because the representation read as if the surgical consultation had already taken place (which it purportedly had, as described more ahead):

> [Plaintiff] has again consulted with WestSound Orthopaedics regarding possible surgery and was also referred to a pain management clinic. WestSound Orthopaedics wanted an updated MRI before their consultation. Ms. Arnette says she had the MRI but had to cancel the orthopaedic consult because she became ill, and the orthopaedic consult is being rescheduled, and that the pain management clinic would not see or treat her until the antibiotics taken for her illness clears her system.

Ex. H at ¶ 3(2).

In the very first sentence of the representation, Plaintiff counsel seems to admit that the consultation "regarding possible surgery" already happened. Notably though, there is no mention of what the orthopedic physicians Plaintiff had "again consulted with…regarding possible surgery" actually determined. Plaintiff's counsel wrote as if to suggest that further consideration of surgical intervention was pending; the claim was that *other* consultations had been scheduled, canceled, and were having to be rescheduled to address an "open question" as counsel described it. *Id.* at 3:1-4; *see also* Ex. E at 8 (emailing).

5. <u>Subsequently Obtained Medical Records Exposing Plaintiff's Bad Faith</u>

Notwithstanding what Plaintiff's counsel represented to the Court about the supposed inability to determine Plaintiff's need for surgery in October 2020, what was eventually borne out by the records defense counsel was able to obtain later—some or all of which were in Plaintiff's counsel's possession at the time he made the aforementioned representations—is that <u>Plaintiff had undergone no fewer than **three** post-incident surgical consultations concerning her knee, going all the way back to 2018, all of which resulted in the determination that she was not a surgical case.</u> *See* highlighted records of surgical consultations from 6/28/2018, 9/14/2018, and 7/20/2020, attached hereto as **<u>Exhibit I</u>** (noting surgical procedure

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

1   on chronically degenerated knee "may actually make it worse," that "there is [not] any surgical

2   indication in setting of degenerative changes, [and] degenerative lateral meniscus tear").

3       The last or most recent post-incident surgical consultation it seems was the one

4   Plaintiff's counsel made reference to via email in July 2020.  Ex. E at 2; *see also supra* pg. 3:7-

5   8 (discussing same).  It was back at that time that Plaintiff's counsel first claimed to be unsure

6   about the arbitrability of the case and to be awaiting the outcome of an orthopedic consult

7   regarding potential knee surgery, which would supposedly give him an answer.  Ex. E at 2.[3]

8   The records reflect that this consultation went forward, and the answer as to surgery was "no,"

9   for at least the third time.  *See* Ex. I.  As far as counsel for Walmart can tell, this was the last

10  time Plaintiff consulted for any surgical issue allegedly related to what happened at Walmart,

11  notwithstanding what Plaintiff's counsel represented to the Court or to Walmart via email.

12      The pending-surgery-consultation story would be the same one Plaintiff's counsel

13  would continue to rely on up and through February 11, 2021, when telling counsel for Walmart

14  via email that this consultation had supposedly been canceled, again, because Plaintiff had

15  fallen ill, again.  *See* Ex. E at 10.  In these same emails, Plaintiff's counsel represented that his

16  client was still "trying to schedule an appointment with the pain clinic."  *See id.*  Like with the

17  consultation story, however, the records suggest that this was another false representation.

18      According to medical records subsequently obtained by Walmart,[4] Plaintiff was

19  referred to and began actively treating with the pain clinic just two days after she was told for

20  the third and last time that there was no surgical option for her.  *See* 7/22/2020 Initial

21

22  _____

[3] Of course counsel for Walmart was not aware at the time—not yet having access to any of Plaintiff's medical

23  records—that this would be the third such procedure, and that in fact Plaintiff had been told as far back as June 28,
    2018, some two years earlier, that surgery was unlikely to relieve any of her pain and held greater potential to

24  make her subjective complaints worse.  *See* Ex. I.

25  [4] Which the Court can see were not available made available to Walmart during the times defense counsel was
    speaking with Plaintiff's counsel, such that defense counsel was forced to rely on the latter's representations.  *See*
    Ex. E at 10 ("I don't have any of the records yet.").

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 7

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

Evaluation Consult with Peninsula Pain Clinic, attached hereto as **Exhibit J**.  In other words, Plaintiff had been actively treating at the pain clinic, <u>specifically because she was determined not to be a surgical candidate</u>, for some 7 months beyond the time that Plaintiff's counsel was telling defense counsel that his client was still "trying to schedule an appointment."  Another way of thinking about this is that Plaintiff's counsel had known surgery was not on the table for at least as long as this while continuing to represent that surgery was an open issue, pending further consideration, in order to keep Walmart locked in stasis.

> 6.  <u>Further Bad Faith Obfuscation Blocking Both Removal *And* Arbitration</u>

With the only supposed impediment to arbitration having been lifted with the February 11, 2021, email from Plaintiff's counsel—i.e., with Plaintiff's counsel finally sharing the information that was known his client and/or to him since July 20, 2020, at the latest[5]—it only made sense that counsel for Walmart would reach out about transferring the case to arbitration again.  So this is precisely what defense counsel did, within just a few minutes of receiving the above described email from Plaintiff's counsel.  *See* Ex. E at 10 (asking, "Arb?").[6]  Here though, one more time, Plaintiff's counsel brought up a pending orthopedic consultation as some sort of bar to his ability to discern the arbitrability of the case.  *Id.* at 12 ("I'm leaning towards MAR, but it's hard to put a value on the case before the orthopedic consultation.").

It would be months before counsel for Walmart would hear anything further, with defense counsel continuing to try to engage—even joking about sending a "friendly monthly email" in April 2021, "wondering what we're doing on this case."  Ex. E at 14.  Plaintiff's counsel finally responded, roughly two months after the parties had last communicated, saying that Plaintiff was "done treating," further cementing the arbitrability of the case in Walmart's

---

[5] That surgery was not indicated for Plaintiff's alleged injuries, that she had been referred to pain management.

[6] Actually, defense counsel raised the prospect of transferring to arbitration *and* re-raised the prospect of settlement negotiations, noting that there had never been a response to Walmart's 10/20/2020 offer.

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

1    view and prompting another attempt at negotiation by Walmart.  *See id.* at 15-16 (asking if

2    there was interest in "giving mediation a shot").  Here again though, Walmart's mediation

3    proposal drew an odd response (like with the motion to compel and request for sanctions back

4    in October 2020).  Instead of responding to the question about mediation, or the long-pending

5    request to jointly seek transfer to arbitration—which seemed to be the logical, frankly

6    inevitable option at that point in time[7]—Plaintiff's counsel wrote, curtly, about the need to take

7    his first deposition in the case, roughly one year into the matter.  *Id.* at 17.

8        7.   Late Discovery By Plaintiff While Stringing Along Walmart

9        Plaintiff's first deposition would go forward on June 9, 2021, lasting roughly 30

10   minutes.  Certainly, this deposition of a former Walmart employee had no bearing on

11   Plaintiff's medical condition, claimed damages, or the amount in controversy.  At the

12   conclusion of the deposition, the parties were roughly five months out from trial.

13       All signs continued to point in direction of arbitrability[8]; however, when Plaintiff's

14   counsel served two supplemental witness disclosures in July-August 2021, a year after the

15   deadline to do so, and with just a couple months left to go in discovery, the signals were mixed

16   and confusing enough that defense counsel felt compelled to reach out one more time to try to

17   try to get a read on case direction.  So, on the date Plaintiff served the second supplemental

18   witness disclosure, counsel for Walmart called Plaintiff's counsel, to try to figure out what

19   Plaintiff was doing frankly, and to one more time try to elicit a substantive response to

20   Walmart's settlement offer.  Ex. E at 18.

21

22

23   [7] When Plaintiff's counsel was first supposedly struggling with the arbitrability of the case because of claimed uncertainty as to whether Plaintiff's injuries warranted surgery, he suggested to defense counsel that arbitration might still be "on the table" *even if Plaintiff had to undergo surgery*.  Thus, the idea that Plaintiff would be

24   determined not to be a surgical case, and that she would be done treating, and that the case would somehow not be arbitrable was never really in consideration.

25   [8] *See supra* note 7 and accompanying text.

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 9

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

1    During the phone call on August 2, 2021, Plaintiff's counsel said he would

2  communicate with his client and respond to Walmart's offer, so counsel for Walmart elected

3  not to make any immediate moves in anticipation of this long-awaited response.  *See* Ex A.

4  When a week passed without hearing anything from Plaintiff's counsel though, counsel for

5  Walmart was finally reconciled to the reality of the situation.  To the extent Walmart wanted to

6  arbitrate the case, Walmart would have to file the Statement unilaterally, grounded in the

7  medical records and standing representations from Plaintiff's counsel.  So on August 9, 2021,

8  Walmart filed a Statement of Arbitrability.  What happened next came as a shock.

9    8.  Plaintiff's Objection To Statement Of Arbitrability

10    The very next day after Walmart filed a Statement of Arbitrability, at 2 o'clock in the

11  afternoon—and despite having 14 days to act under local rules—Plaintiff's counsel filed an

12  Objection to Walmart's Statement of Arbitrability, checking a box indicating the "Plaintiff's

13  claim exceeds One Hundred Thousand Dollars ($100,000), thereby **more than doubling** the

14  only prior representation Plaintiff had made concerning the value of her claim."  *See* Pl.'s

15  Objection, attached hereto as **Exhibit K**.  The fact that Plaintiff's claim could exceed $100,000

16  at all, let alone in a situation where it had been determined that she would *not* undergo surgery,

17  came as a complete surprise to defense counsel.  The shock was more stinging on account of

18  the fact that Plaintiff's counsel had strung Walmart along for weeks and even months at a time

19  during the life of the case, while mustering an objection within the space of 24 hours to

20  Walmart's attempt to transfer to arbitration.  Plaintiff's objection was also confounding in that,

21  at the time of the objection, Plaintiff's only claimed damages were (still) barely above $5,000,

22  with general damages estimated to be $40,000.  *See* Ex. C.[9]   This objection, served on August

23

24

---

[9] Even beyond the RSD and discovery responses, which Plaintiff has refused to supplement or simply not
25  answered, even if one were to simply add up *all* of Plaintiff's post-incident medical treatment from associated
billing records, that amount does not support a claim in excess of $100,000 in Walmart's view.

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 10

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

10, 2018, constituted Walmart's first and only notice of a claim in excess of both the diversity jurisdiction threshold of $75,000 *and* the $100,000 arbitration limit.

9.   Request To Withdraw Arbitration Objection/Removal

Prior to seeking removal, counsel for Walmart asked Plaintiff to withdraw the objection to arbitration as there did not purport to be any basis to claim in excess of $100,000 based on any of the information in the record in this case.[10] *See* 8/12/2021 correspondence to Pl.'s counsel, attached hereto as **Exhibit L**.  In correspondence to Plaintiff's counsel, counsel for Walmart requested that Plaintiff at the very least explain why or how Plaintiff's claim could possibly have more-than-doubled, particularly when all of the recommendations that supposedly held the potential to increase the value of her claim had been denied and rejected by her consulting physicians (surgery).  Here again though, Plaintiff's counsel did not even offer the courtesy of an acknowledgment of receipt, let alone an actual substantive response.

III. STATEMENT OF ISSUE

Whether to find bad faith on the part of Plaintiff and allow removal beyond the statutory deadline, where Plaintiff explicably more than doubled her claim for damages outside of the statutory deadline, and where Plaintiff's counsel misled defense counsel by falsely claiming that Plaintiff had medical consultations pending that would or could affect the extent of her claims so as to delay or prevent Walmart from seeking removal, and where all of the other pre-conditions for original jurisdiction defined under 28 U.S.C. § 1332 are met.

IV. EVIDENCE RELIED UPON

This motion is based upon the records and pleadings on file with the Court, as well as the Declaration of Eddy Silverman, Esq., attached hereto as Exhibit A.

///

///

---

[10] *See supra* note 10.

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 11

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## V. ARGUMENT

A. This Case Is Removable Under 28 U.S.C. §§ 1332 and 1446(c)(3)(B) Because Plaintiff Acted In Bad Faith In Deliberately Failing To Disclose The Actual Amount In Controversy

The district courts shall have original jurisdiction of all civil actions where (1) the parties in the case are diverse as defined by 28 U.S.C. § 1332(a)(1)-(4), and where (2) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The amount in controversy can either be evident "on the face" of the Complaint or ascertained via some later pleading(s) or "other paper" in the record of the state court proceeding. *See* 28 U.S.C. § 1446(b)(3); *see also Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689 (2005). When and how removability is "ascertainable" matters with respect to whether removal is timely under 28 U.S.C. § 1446. There are, generally speaking, two viable "removal periods." *See Harris*, 425 F.3d at 694. [1] A defendant has 30 days to remove a case if the removability of the case is evident on the face of the complaint; or [2] a defendant has 30 days beyond some later period from which it first becomes ascertainable that the case is removable. *See id.*

A diverse case in which it later becomes ascertainable that the amount in controversy is in excess of $75,000 based upon the service of "other paper" in the state court proceeding may not be removed under § 1446(b)(3) more than 1 year after commencement of the action, unless "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). There are different ways that a plaintiff can act in bad faith to prevent removal, one of which is a deliberate failure to disclose the *actual* amount in controversy. *See* 28 U.S.C. § 1446(c)(3)(B).[11] The burden of showing the plaintiff acted in bad faith to prevent removal lies with the removing defendant. *Jones v. Ramos Trinidad*, 380 F. Supp. 3d 516, 521 (5th Cir. 2019). The Ninth Circuit reviews the

---

[11] "If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under [28 U.S.C. § 1446(c)(1)]."

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 12

district court's finding of facts relevant to subject matter jurisdiction for clear error.  *Chavez v. Time Warner Cable, LLC*, 728 Fed. App. 645 (9th Circ. 2018).

　　While the Western District of Washington and other Courts in the Ninth Circuit have described the burden of establishing bad faith to toll the removal deadline as "high," there is an important distinction to be made; these cases tend to involve [A] plaintiffs joining non-diverse parties (in bad faith allegedly), as opposed to the situation presented here, where the issue of one of [B] bad faith failure to disclose actual amount in controversy.  *See, e.g.*, *Kolova v. Allstate Ins. Co*, 483 F. Supp. 3d 1192 (W.D. Wash. 2020); *Heacock v. Rolling Frito-Lay Sales, LP*, 2016 WL 4009849 (W.D. Wash. 2016) (dealing with question of whether plaintiff joined non-diverse parties in bad faith to prevent removal and noting that the Ninth Circuit has declined to find bad faith in this specific context except where a plaintiff basically does nothing at all with respect to that defendant in discovery—i.e., fails to litigate "in any capacity").

　　While "[relatively] few cases have interpreted the bad faith exception" and the case law interpreting bad faith is "still developing,"[12] establishing bad faith via failure to disclose the actual amount in controversy under 28 U.S.C. 1446(c)(3)(B) is less difficult than in the non-diverse defendant context.  *See Barnett v. Sylacauga Autoplex*, 973 F. Supp. 1358, 1367 (N.D. Ala. 1887) (holding that bad faith "can generally be inferred" from a change with jurisdictional implications outside of the statutory bar where the plaintiff "has produced no justification" for the delay).[13]  Unlike in non-diverse-defendant cases, bad faith is "routinely" established in cases like this one,[14] including a number of cases wherein Walmart was the named defendant.

---

[12] *Hill v. Allianz Life Ins. Co. of N.A.*, 51 F. Supp. 3d 1277, 1282 (M.D. Fla. 2014); *Miami Beach Cosmetic and Plastic Surgery Ctr., Inc. v. UnitedHealthcare Ins. Co.*, 2016 WL 8607846, at *4 (S.D. Fla Jan. 8, 2016).

[13] *See also Ruffin v. Clark*, 2019 WL 5704927, at *2 (S.D. Ala. 2019) (citing a half-dozen or so cases from federal courts around the United States finding bad faith concealment of the actual amount in controversy).

[14] *Accord Wilson v. Fresh Market, Inc.*, 2020 WL 355192, at *5 (S.D. Fla. 2020) ("[C]ourts routinely find bad faith where plaintiffs seek to amend their complaints after the one-year removal window has expired to claim damages more than $75,000.").

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 13

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

For example, just this past January, in *O'Connor v. Wal-Mart Stores East, LP*, 2021 WL 681874 (W.D.N.Y. 2021), the United States District Court for the Western District of New York recommended that a motion to remand be denied based on a finding of what "[appeared] to have been a deliberate attempt to prevent removal, thereby excusing defendants' failure to remove the action to this court within one year of its commencement." *Id*. at *2.  The court found that defendants had served plaintiff with a demand for an amount in controversy and repeated that demand several times over the life of the case.  *Id*.  Despite repeated assurances that responsive information would be provided, plaintiff failed to state her damages or submit a demand until after the one-year removal deadline expired.  *Id*.  This was the case despite the fact that defendants had told plaintiff's counsel a few months earlier that they would remove if there was diversity jurisdiction.  *Id*.  The court found that even though defendants could have moved to compel production of information earlier, that plaintiff's unexplained delay in disclosing the amount in controversy was a deliberate attempt to prevent removal.  *Id*.

The case at bar is actually worse than *O'Connor* in a manner of speaking because, unlike in the former case, Plaintiff here actually *did* state her damages, affirmatively representing that they were well below the removal threshold until the one-year removal window closed (while refusing to submit a demand or respond to Walmart's settlement offer incidentally, either of which would have presumably revealed the actual amount in controversy).  Like in *O'Connor* though, the delay in disclosing the actual amount in controversy here is unexplained.  Plaintiff's counsel has ignored correspondence asking how this could have happened, while at the same time refusing to supplement discovery or Plaintiff's response to Walmart's RSD, or agree to a continuance in superior court.  Ex L.

*Brown v. Wal-Mart Stores, Inc.*, 2014 WL 60044 (W.D. Va. 2014), is another federal case involving Walmart as a defendant, wherein the District Court for the Western District of Virginia found that the plaintiff failed to disclose, or affirmatively concealed, the actual

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 14

1  amount in controversy, warranting a finding of bad faith under 28 US.C. § 1446(c)(3)(B).[15]  In

2  that case, Brown delayed serving process on Walmart for 9 months.  2014 WL 60044, at *2.

3  Brown then failed to respond to a settlement inquiry or provide answers to discovery aimed at

4  determining the amount in controversy until after the one-year anniversary of filing suit.  *Id.*

5  Eight days beyond this anniversary, Brown sent a letter with a $200,000 settlement demand.

6  *Id.*  In finding that Brown's post-removal-deadline revelation of the actual amount in

7  controversy constituted bad faith, the court noted that other courts had found similar delaying

8  tactics sufficient to warrant application of the bad faith exception.  *Id.*  The court specifically

9  called out (1) failing to respond to discovery requests, (2) failing to notify an opposing party of

10  a belief the amount in controversy exceeded $75,000, and (3) unexplained increases in claimed

11  damages following expiration of the one-year removal period.  *Id.*

12       Here in the *Arnette* matter, <u>all</u> of the delaying tactics identified by the Western District

13  of Virginia as warranting a finding of bad faith under § 1446(c) are present—and, again, the

14  record here is worse because <u>Plaintiff and her counsel were not simply *not* responding, they</u>

15  <u>were making affirmative representations of an amount in controversy well under the removal</u>

16  <u>limit, *and* making affirmative mis-representations to counsel for Walmart as justification for</u>

17  <u>further delay, which information ultimately had no bearing on the amount in controversy</u>

18  <u>whatsoever</u>.  With respect to the latter, when it turned out Plaintiff would not undergo surgery,

19  a fact known to Plaintiff for well over six months before being shared with Walmart, she and

20  her counsel *still* claimed damages in excess of not merely the $75,000 removal threshold, but

21  even the <u>$100,000</u> arbitration limit.  Thus, it was not even "a close call."  Obviously, this was

22  the "actual" amount in controversy all along, which Plaintiff deliberately failed to disclose.

---

[15] This case was nevertheless still remanded, for reasons that are not relevant to the analysis here—i.e., because a determination was ultimately made that the jurisdictional threshold of $75,000 was not met such that the parties entered into a post-removal stipulation jointly attesting to this fact.

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

The claim from the other side has always been that arbitrability—and therefore removal too[16]—hung on the results of a surgical consultation that Plaintiff was set to have in July 2020 concerning her knee.  Plaintiff's counsel did not share that Plaintiff had already had two prior surgical consultations in which her knee was deemed non-operative; nor, more importantly, did he share that the July 2020 consultation had gone forward, and that again, for the final time it seems, a decision was made against surgery for the knee.  Instead, Plaintiff's counsel continued to suggest that there were other pending consultations, that surgery was "an open issue," and left Walmart waiting on answers that were never coming.

The case to which this matter is ultimately most similar—and least with respect to the three cases explicated here—is *Thompson v. Belk, Inc.*, 2013 WL 5786587 (N.D. Ga. 2013).  In *Thompson*, the District Court for the Northern District of Georgia denied Plaintiff's Motion to Remand, and permitted removal of the action 17 months after it was commenced, based on what the court described as "disguising" the amount in controversy, and bad faith "manipulation."  In the case, Plaintiff failed to provide any information regarding her alleged damages until after the one-year removal period had expired, forcing the defendant to move to compel the same.  *Id.* at *3.  When Thompson was forced to respond, her answers revealed that she knew or should have known, prior to the expiration of the one-year period for removal, that the amount in controversy exceeded the jurisdictional threshold.  *Id.*  The *Thompson* Court found that plaintiff's counsel has deliberately concealed the amount in controversy as part of his "legal strategy" and had affirmatively "disguised" removability.

This case is like *Thompson* both in terms of the age of the case at the time of removal, as well as in view of the clear strategic efforts to affirmatively "disguise" the amount in controversy.  This is not a case of mere negligent oversight.  Counsel for Walmart made

---

[16] *See supra* note 1 and accompanying text.

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 16

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

abundantly clear from the outset that Walmart required damages information to evaluate the "amount in controversy."  Plaintiff and/or her counsel made affirmative representations of an amount far below the federal jurisdictional threshold, then strung Walmart along with a story of a surgical consultation that was supposedly necessary to answer a question, the answer to which did not matter at all; Plaintiff was claiming +$100,000 regardless, but never shared this.

Plaintiff's counsel indirectly communicated for the first time in the life of the case that the actual amount in controversy is more than twice what was previously claimed, and then went totally dark—refusing to even attempt to justify the tectonic shift in this case.  This is unmistakable bad faith with clear purpose: first, to deprive Walmart of removal under § 1332, and now to block arbitration too, to force Walmart to prepare a case that was supposed to be an arbitration case—even *with surgery* potentially—on less than two-months-time (current discovery-close is 9/20/2021).  *Accord Vallecillo v. Wells Fargo*, 2017 WL 9935522 (W.D. Tex. 2017) ("Because bad faith 'can generally be inferred from amendment outside of the statutory bar,' and Plaintiffs have failed to negate the inference with a reasonable justification for more than doubling the amount in controversy after the one year-limitation, the Court finds that Plaintiffs have acted in bad faith to prevent the removal of this case.").

B.  This Case Is Otherwise Subject To This Court's Jurisdiction Under 28 U.S.C. § 1332

The most involved question surrounding this Notice of Removal is the bad faith issue discussed at length supra.  Beyond this point, the analysis is straightforward and simple.

1.  There Is Diversity Between The Parties

According to the Complaint, Plaintiff is a resident of Kitsap County, Washington, Washington.  Ex. B at ¶ 2.1.  Thus, Plaintiff is a "citizen of" Washington State.  Walmart Inc. is (a) incorporated in Delaware, and (b) its principal place of business is in Arkansas.  Thus, Walmart is a "citizen of" either Delaware or Arkansas, but not Washington State.  *See* 28

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 17

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

U.S.C. 1332(c)(1) (identifying bases of *corporate* citizenship). Based on the foregoing, there is total diversity between these parties as described in 28 U.S.C. 1332(a)(1).

> 2. <u>The Amount In Controversy Is Apparently Now In Excess Of $75,000</u>

Plaintiff did not claim a sum certain in the Complaint. Plaintiff objected and did not respond to an Interrogatory seeking damages information, but separately responded to Walmart's Request for Statement of Damages with an amount below the jurisdictional threshold (~$45,000, altogether). However, on August 10, 2021, Plaintiff served an objection to Walmart's attempt to transfer this matter to arbitration, affirmatively representing that "Plaintiff's claim exceeds One Hundred Thousand Dollars ($100,000)." Ex. K. Plaintiff refuses to explain how Plaintiff's claim has risen to this amount; however, based on this representation, which constitutes "other paper" served within the state court proceeding as described in 28 U.S.C. §1446(b)(3), Walmart now believes that the amount in controversy in this matter is in excess of $75,000, exclusive of interest and costs.

> 3. <u>Walmart's Notice Of Removal Is Timely</u>

Walmart is filing this Notice within 30 days of service of Plaintiff's objection to arbitration, such that this Notice is timely under 28 U.S.C. § 1446(b)(3). Walmart has already addressed at length the timeliness of this notice vis-à-vis § 1446(c)(1); Walmart maintains that this notice is timely and/or that the time for Walmart to remove should be extended beyond the one-year limitation set out in § 1446(c)(1) on account of Plaintiff's bad faith.

C. <u>Walmart's Notice Of Removal Complies With All Applicable Local And Federal Procedural Rules Attendant To Removal</u>

> 1. <u>This Notice And Accompanying Documents Satisfy LCR 101</u>

Pursuant to LCR 101(b), in cases removed from state court, the removing defendant shall file contemporaneously with the notice of removal:

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 18

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1

(1) A copy of the operative complaint, which must be attached as a separate "attachment" in the electronic filing system and labeled as the "complaint" or "amended complaint."

(2) A certificate of service which lists all counsel and pro se parties who have appeared in the action with their contact information, including email address.

(3) A copy of any Jury Demand filed in the state court, which must be filed as an attachment and labeled "Jury Demand."

In addition to the foregoing, the removing defendant(s) shall, within 14 days of filing this Notice, or contemporaneously, file with the clerk of this Court black-on-white copies of all additional records and proceedings in the state court, together with verification that they are true and complete copies.  LCR 101(c).

Walmart has filed and/or otherwise provided true and complete copies of all of the above referenced documents as required under local rules, including copies of all records and proceedings filed in the state court proceeding being removed by virtue of this petition.  These documents/exhibits constitute and contain the entirety of the records and proceedings filed in Pierce County Superior Court as of the date of filing this Notice.

2. <u>Both The Federal And State Courts Are On Properly Notice Of This Removal Action</u>

This Notice is properly filed in the United States District Court for the Western District of Washington because this Court embraces Pierce County, the county in which the state court action is now pending.  *See* 28 U.S.C. §§ 128(b) and 1441(a).

Pursuant to 28 U.S.C. §§ 1446(d), Walmart is filing a copy of this Notice with the Clerk of the Pierce County Superior Court and is also serving a copy of this Notice on Plaintiff's counsel of record in the state court action.

VI. <u>CONCLUSION</u>

The establishment of bad faith in the context of 28 U.S.C. § 1446(c)(3)(B) begins with a presumption, or inference, that a party has engaged in bad faith where there is an unexplained

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 19

1    "amendment" of a claim with jurisdictional implications beyond a statutory deadline.  This is

2    exactly what happened in this case—the more-than-doubling of the claims at issue,

3    inexplicably, beyond the one-year mark.  What is worse, or more suspicious one might say, is

4    that this doubling occurred even in the absence of what purported to be the only factor that

5    could increase the claim.  To wit, surgery came off the table and the demand still doubled.

6    What this suggests is that the demand was always "double," and no surgical consultation—

7    even if one had actually been scheduled or canceled—was going to change this.  In retrospect,

8    the perpetually evasive surgical consultation was just a ruse borne out of bad faith.

9         The *actual* amount in controversy here was concealed, deliberately.  To the extent there

10   was any doubt, opposing counsel going dark and refusing to even try to offer up a justification

11   cements this fact—and, incidentally, fails to rebut the presumption of bad faith.  Cases like this

12   are why § 1446 was amended, to prevent parties acting in bad faith from benefitting from bad

13   behavior.  Insofar as Walmart was delayed in invoking § 1332 to remove this case nearer to

14   commencement on account of this bad faith, Walmart now invokes 28 U.S.C. § 1446(c)(3)(B)

15   to remedy the concealment at issue here, and to properly vest jurisdiction in this diverse matter

16   wherein it is only now apparent that the amount in controversy is actually in excess of $75,000.

17

18

19

20

21

22

23   \\\

24   \\\

25   \\\

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 20          **Williams, Kastner & Gibbs PLLC**
                                                         601 Union Street, Suite 4100
                                                         Seattle, Washington 98101-2380
                                                         (206) 628-6600

7442096.1

1    DATED this 23rd day of August, 2021.

2                                                    WILLIAMS, KASTNER & GIBBS PLLC

3

4                                                    *By: s/Eddy Silverman*
                                                        Rodney L. Umberger, WSBA No. 24948
5                                                        Eddy Silverman, WSBA No. 53494

6                                                    Two Union Square
                                                     601 Union Street, Suite 4100
7                                                    Seattle, WA 98101-2380
                                                     Phone:  206.628.6600
8                                                    Fax:     206.628.6611
                                                     Email:  rumberger@williamskastner.com
9                                                            esilverman@williamskastner.com

10                                                   ***Counsel for Defendant***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NOTICE OF REMOVAL BY DEFENDANT WALMART INC. 21          **Williams, Kastner & Gibbs PLLC**
                                                         601 Union Street, Suite 4100
                                                         Seattle, Washington 98101-2380
                                                         (206) 628-6600

7442096.1

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned certifies under penalty of perjury under the laws of the State of

3

Washington that on the date indicated below, I caused service of a true and correct copy of the

4

foregoing document in the manner indicated below to:

5

Greg S. Memovich, WSBA   13588                    ☑  ECF

6

Law Offices of Greg S. Memovich, PLLC

7

9301 Linder Way NW, Suite 201
Silverdale, WA 98383

8

Ph: (360) 692-1347
Fax: (360) 692-3893

9

Email: greg@injurylawkitsap.com

10

11

12

***Counsel for Plaintiff***

13

14

Signed at Lynnwood, Washington this 23rd day of August, 2021.

15

WILLIAMS, KASTNER & GIBBS PLLC

16

*/s/Catherine Berry*

Catherine Berry, Legal Assistant

17

cberry@williamskastner.com

18

19

20

21

22

23

24

25

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

7442096.1